IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **MATCHSTICK STUDIO, LLC**<br><br>Plaintiff,<br><br>*v.*<br><br>**JORDAN CARMON and CARMON TECHNOLOGIES, LLC**,<br><br>Defendants. | CIVIL ACTION NO.   **5:25-cv-05131-TLB** |

## <u>COMPLAINT</u>

Plaintiff Matchstick Studio, LLC ("Matchstick" or "Plaintiff") brings this Complaint against Defendants Jordan Carmon ("Carmon") and Carmon Technologies, LLC ("CTL") (collectively, "Defendants"), and states and alleges as follows:

### NATURE OF THE CASE

1.      This is a civil action for federal copyright infringement, federal and state misappropriation of trade secrets, state unfair competition, state breach of fiduciary duty, and related claims.

2.      Upon information and belief, Defendants have knowingly and willfully infringed Matchstick's copyrights. Defendants have infringed Matchstick copyrights by reproducing, making derivative works of, and/or distributing at least four of Matchstick's registered copyrighted works without authorization. True and correct copies of the registrations are attached as Exhibit A

("Forms.php" TX0009407583), Exhibit B ("Forms.js" TXu002483784), Exhibit C ("Msf-ajax.js" TX0009407593), and Exhibit D ("Msf-tools.js" TX0009407586) (the "Matchstick Copyrights").

3.      Upon information and belief, Defendants have knowingly and willfully misappropriated Matchstick's trade secrets, including (1) trade secrets relating to the design and operation of Matchstick's "Modular Orange" platform, including trade secrets embodied in backend code like Forms.php and other valuable non-public files, and (2) trade secrets relating to customer websites, customer contact information, other customer data, web form submission data, and emails (the "Matchstick Trade Secrets") (the Matchstick Copyrights and Matchstick Trade Secrets are collectively referred to as the "Matchstick IP").

4.      Upon information and belief, Defendant Carmon has and continues to knowingly and willfully cause, induce, and contribute to Defendant CTL's (1) infringement of Matchstick Copyrights and (2) misappropriation of Matchstick Trade Secrets, both to the ongoing detriment of Matchstick and CTL.

5.      Upon information and belief, CTL is the alter ego of Carmon in that it is merely an extension of Carmon's personal interest such that he is personally liable for all of CTL's actions complained of in this lawsuit. Upon information and belief, and by way of example, (1) Carmon and CTL have improperly commingled funds, (2) Carmon exercises direct control over CTL's infringing and illegal activities, (3) Carmon has and continues to use CTL as a shield for his infringing and illegal activities. Furthermore, Carmon has abused CTL in attempt to shield himself from liability for the injustices he is perpetuating against Plaintiff. In the alternative, Carmon and CTL are jointly and severally liable for their infringing and illegal activities described herein.

6.      Austin Phillips ("Phillips"), current owner of Matchstick, and Carmon formed Matchstick in 2015. Matchstick created and still owns the "Modular Orange" platform, an online

software platform that allows them to rapidly build client websites and provide tools enabling clients to make edits to their own websites. Phillips and Carmon held an equal 50% ownership interest in the company until Carmon sold his member interest to Phillips, resulting in Phillips obtaining 100% ownership interest in Matchstick.

7.    Upon information and belief, just before completing the transfer of ownership and being locked out of Matchstick assets, Carmon appeared to have pirated a copy of Matchstick's database and Modular Orange platform, which includes the Matchstick Copyrights and Trade Secrets, and attempted to sabotage Matchstick on his way out the door.

8.    Carmon and CTL are now using Matchstick IP to steal clients from Matchstick and create identical websites to those designed, created, and hosted by Matchstick.

## THE PARTIES

9.    Plaintiff Matchstick is an Arkansas limited liability company, with its principal place of business in Washington County, Arkansas.

10.   Upon information and belief, Defendant Carmon is an adult individual and resident of Farmington, Washington County, Arkansas.

11.   Upon information and belief, Defendant CTL is an Arkansas limited liability company, with its principal place of business in Washington County, and whose registered agent is Carmon.

12.   Upon information and belief, Carmon is the sole owner of CTL.

## JURISDICTION AND VENUE

13.   This action includes a claim for copyright infringement arising under the copyright laws of the United States, *i.e.*, Title 17 of the United States Codes.

3

14.     This action includes a private civil claim for trade secret misappropriation under the Defend Trade Secrets Act of the United States, *i.e.,* 18 U.S.C. § 1836.

15.     This Court has subject matter jurisdiction over the copyright infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     This Court has subject matter jurisdiction over the federal trade secret misappropriation claim pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

17.     This Court has subject matter jurisdiction over the joined claim of unfair competition pursuant to 28 U.S.C. § 1338(b).

18.     This Court has supplemental jurisdiction over the remaining related claims pursuant to 28 U.S.C. § 1367(a) because the claims form part of the same case or controversy.

19.     Upon information and belief, this Court has general and specific personal jurisdiction over Defendant Carmon because Carmon resides in Washington County, Arkansas and because Plaintiff's causes of action arise directly from Carmon's contacts and other activities in Arkansas.

20.     Upon information and belief, this Court has general and specific personal jurisdiction over Defendant CTL because CTL is an Arkansas LLC with a principal place of business in Washington County, Arkansas and because Plaintiff's causes of action arise directly from CTL's contacts and other activities in Arkansas.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants reside in this judicial district, have committed the alleged acts of infringement in this judicial district, and have established places of business in this judicial district.

## CREATION OF MATCHSTICK AND ITS INTELLECTUAL PROPERTY

22.    On September 2, 2015, Phillips and Carmon formed Matchstick under the laws of the state of Arkansas as a creative studio producing websites, branding, and marketing materials. Phillips served as the Co-Founder and Creative Director of Matchstick. Carmon served as Co-Founder and Digital Director of Matchstick.

23.    The formation of the LLC, as well as the powers and duties of all LLC members, were memorialized in a Limited Liability Company Operating Agreement, which identified Phillips and Carmon as the sole members of the LLC, with each having an equal 50% ownership interest.

24.    After the initial formation of the company, Phillips and Carmon, with the assistance of Matchstick employees and developers, began developing the "Matchstick Framework," which included a "no-code" online website building software platform that allowed Matchstick to rapidly design and develop websites without the need for a developer to write custom code for each website. It also included an innovative content management system that allowed clients to easily edit their own websites.

25.    Matchstick eventually rebranded the Matchstick Framework as "Modular Orange," and focused its business efforts primarily on growing that piece of its business.

26.    Modular Orange was created by Phillips, Carmon, and other employees of Matchstick with company assets, on company time, to serve Matchstick's clients, as a product and extension of Matchstick's creative studio services.

27.    All intellectual property developed by Matchstick for Modular Orange was and is owned solely and exclusively by Matchstick, including the Matchstick IP.

28.    All copyrightable material developed by Matchstick for Modular Orange was and is owned solely and exclusively by Matchstick, including the Matchstick Copyrights.

29.     The Matchstick Copyrights were created by (1) Matchstick employees within the scope of their employment and developers subject to "work-for-hire" agreements and therefore are works made for hire owned by Matchstick and/or (2) by Matchstick owners, officers, or directors, including Defendant Carmon, as works for hire and/or as works made for the benefit of Matchstick.

30.     The Matchstick Trade Secrets were created by Matchstick employees and developers and are owned by Matchstick.

31.     All intellectual property developed by Carmon for Modular Orange was and is owned solely and exclusively by Matchstick, including his contributions to the Matchstick IP.

32.     All copyrightable material developed by Carmon for Modular Orange was and is owned solely and exclusively by Matchstick, including his contributions to the Matchstick Copyrights.

33.     All trade secrets developed by Carmon for Modular Orange was and is owned solely and exclusively by Matchstick, including his contributions to the Matchstick Trade Secrets.

34.     The Modular Orange platform includes numerous copyrighted works including front-end and backend source code, markup code, and electronic files.

35.     Matchstick obtained registrations with the United States Copyright Office for some of its source code files.

36.     Front-end JavaScript files covered by registration include Forms.js (TXu002483784), Msf-ajax.js (TX0009407593), Msf-tools.js (TX0009407586), Msf-drag-drop.js (TX0009413213), Msf.js (TX0009418357), Msf-media.js (TX0009413220), Msf-utilities.js (TX0009418356) (the first three being part of the asserted Matchstick Copyrights).

37.    To the extent a front-end JavaScript file in Modular Orange is based on a preexisting third-party file, Matchstick owns copyright to its additions to the third-party file and to the resulting derivative work.

38.    Matchstick's front-end JavaScript files are all published works. Some are viewable by inspecting its various client websites, while others are only accessible by customers of Matchstick via their secure login.

39.    The JavaScript files control various dynamic content on client websites.

40.    Matchstick's backend code, including Forms.php, comprises unpublished copyrightable works.

41.    Matchstick has obtained a registration with the United States Copyright Office for the unpublished backend code "Forms.php" (TX0009407583), one of the asserted Matchstick Copyrights.

42.    The backend of the Modular Orange platform, including Forms.php, is critical to operation of the platform. Without the proprietary backend code, the platform would not function.

43.    The backend code is not accessible to the public or users of the Modular Orange platform.

44.    Furthermore, access to the backend code is restricted for Matchstick employees. Access is permitted only to Phillips himself and some Matchstick developers who have signed security agreements.

45.    The backend Modular Orange code comprises Matchstick Copyrights and Matchstick Trade Secrets.

46.    The backend code derives independent economic value from not being generally known to or readily accessible by the public through proper means.

47.    The secret backend code enables Matchstick to rapidly build and edit web sites without the need for new development for each web site. This gives Matchstick a competitive advantage in the marketplace.

48.    Matchstick has taken reasonable measures to keep the valuable backend code secret.

49.    The backend code is withheld even from Matchstick clients and is only viewable by Matchstick developers on a need-to-know basis and subject to security agreements.

### CARMON'S EXIT AND IP THEFT

50.    During late 2023 and early 2024, Carmon attempted to seize control of Matchstick from Phillips and exclude him from the company.

51.    Upon information and belief, Carmon worked with outside counsel to craft a plan to remove Phillips from Matchstick.

52.    Upon information and belief, Carmon coordinated with employees to prevent Phillips from having access to Matchstick property and client information.

53.    Upon information and belief, Carmon attempted to exclude Phillips from ongoing business in an attempt to pressure Phillips to sell.

54.    On February 16, 2024, after his attempts to oust Phillips failed, Carmon offered to sell and transfer his ownership in Matchstick to Phillips.

55.    Upon information and belief, Carmon did not expect Phillips to accept his offer, and therefore Carmon intended to sell to his father after Phillips declined.

56.    Nevertheless, on February 26, 2024, Phillips agreed to purchase all of Carmon's interest in Matchstick to become the company's sole LLC member and owner.

57.    Upon information and belief, after being surprised by Phillips' agreement to buy him out, Carmon then hastily set in motion a new plan to sabotage Matchstick and steal the Matchstick IP on his way out of the company.

58.    On March 6, 2024, Carmon executed an assignment of membership interest which stated that Carmon "does hereby sell, assign, transfer and convey to Austin Phillips all of Assignor's right, title, and interest in and to Assignor's membership interest in Matchstick Studio, LLC." (the "Assignment").

59.    The terms of the transfer included all of Carmon's rights, title, property, and ownership interests in Matchstick to Phillips. The sale included the stipulation that Carmon turn over all of the code for the Modular Orange platform, the server data, and all code repositories along with all websites and clients using the platform.

60.    After selling the interest, Carmon was to leave Matchstick entirely and therefore was required to turn over all Matchstick property to the company, including a Matchstick laptop that had access to the Modular Orange source code ("Matchstick Laptop").

61.    Carmon would also be losing access to a company Slack account used to send internal messages, and a company email address used to communicate with Matchstick clients.

62.    The company email used by Carmon – jordan@matchstickstudio.co – was set up by Matchstick on its own domain, paid for by Matchstick, and, like all company emails, was at all times viewable and controllable by Matchstick admins (the "Matchstick Email Account").

63.    Upon information and belief, prior to leaving Matchstick and losing access to the Matchstick Email Account and the Matchstick Laptop, Carmon communicated with his personal counsel via the Matchstick Email Account on the Matchstick Laptop.

64.    Upon information and belief, Carmon sent emails from the Matchstick Email Account regarding downloading and saving as much of the Modular Orange source code as possible before losing access.

65.    Upon information and belief, Carmon indicated in an email from the Matchstick Email Account that he had to "download everything in the next 36 hours" before he lost access.

66.    Upon information and belief, Carmon sent emails from the Matchstick Email Account regarding taking or destroying company property.

67.    Upon information and belief, Carmon sent emails from the Matchstick Email Account regarding his plan to start a competing company while Carmon was still a 50% owner of Matchstick.

68.    Upon information and belief, Carmon then deleted the entire email history from the Matchstick Email Account, including numerous emails relevant to maintaining Modular Orange.

69.    Upon information and belief, Carmon also changed the settings on the Matchstick Slack account from retaining deleted messages to permanently erasing all deleted messages within 24 hours.

70.    Upon information and belief, Carmon then instructed Matchstick employees to delete all direct Slack messages they had with Carmon, which included critical information regarding client projects.

71.    Upon information and belief, these Slack messages were then permanently deleted due to Carmon's change of settings to Matchstick's Slack account.

72.    Upon information and belief, Carmon's deletion of company emails and Slack messages constitutes destruction of valuable Matchstick property.

73.     Upon information and belief, Carmon's deletion of company emails and Slack messages was a breach of fiduciary duty to Matchstick under Arkansas law.

74.     Upon information and belief, Carmon's plan to form a competing company was a breach of fiduciary duty to Matchstick under Arkansas law.

75.     Upon information and belief, Carmon's plan to take or use Matchstick IP for his own use was a breach of fiduciary duty to Matchstick under Arkansas law.

76.     Upon information and belief, Carmon's deletion of company emails and Slack messages while planning to compete with Matchstick constitutes unfair competition under Arkansas law.

77.     Upon information and belief, Carmon's plan to form a competing company while still owning half of Matchstick constitutes unfair competition under Arkansas law.

78.     Upon information and belief, Carmon's plan to take or use Matchstick IP for the purposes of competing with Matchstick constitutes unfair competition under Arkansas law.

79.     At a later date, Matchstick admins were able to recover at least some of the deleted company emails.

80.     Upon information and belief, at approximately 12:30am on March 6, 2024, the night before he was to sign the Assignment, Carmon began actively accessing the Modular Orange source code on the Matchstick Laptop.

81.     Upon information and belief, at this same time, Carmon plugged a removable storage device into the Matchstick Laptop.

82.     Upon information and belief, Carmon downloaded and saved all source code relating to Modular Orange from the Matchstick Laptop onto his personal storage device.

83.     Upon information and belief, Carmon infringed Matchstick Copyrights when he copied the Modular Orange files, including the Matchstick Copyrights, to a personal storage device.

84.     Upon information and belief, Carmon misappropriated Matchstick Trade Secrets when he copied the Modular Orange files, including Forms.php and other Matchstick Trade Secrets, from the Matchstick Laptop to a personal storage device.

85.     Upon information and belief, Carmon breached his fiduciary duty to Matchstick by transferring Matchstick IP from the Matchstick Laptop to a personal storage device.

86.     Upon information and belief, Carmon's theft of Matchstick IP for purposes of competing with Matchstick also constitutes unfair competition under Arkansas law.

87.     Upon information and belief, Carmon downloaded and saved Matchstick Trade Secrets from the Matchstick Laptop onto his personal storage device.

88.     Upon information and belief, Carmon misappropriated Modular Orange platform trade secrets, including those in Forms.php, by saving Modular Orange files from the Matchstick Laptop to his personal storage device.

89.     Upon information and belief, Carmon transferred valuable client information, including information relating to client contact information and client needs, from the Matchstick Laptop to his personal storage device. Such information comprises Matchstick Trade Secrets.

90.     Upon information and belief, at the time he took Matchstick IP without authorization and for an improper purpose, Carmon was still a 50% owner of Matchstick.

91.     Upon information and belief, Carmon misappropriated Matchstick IP with the intent to use it to compete with Matchstick.

92.     Upon information and belief, Carmon changed the backup retention settings on the Matchstick server with the intent of causing a crash.

93.     The Matchstick server did crash approximately 24 hours after the Assignment was signed.

94.     Upon information and belief, changing the backup retention settings to cause a crash constitutes a breach of fiduciary duty and unfair competition under Arkansas law.

95.     Upon information and belief, Carmon's misappropriation of Matchstick IP constitutes a breach of fiduciary duty and unfair competition Arkansas law.

96.     Upon information and belief, after stealing the Matchstick IP, Carmon deleted or attempted to delete at least 117 Git Log files that showed him accessing the source code repositories while his personal hard drive was plugged in to the Matchstick Laptop.

97.     Upon information and belief, all of the foregoing occurred while Carmon was still an owner and officer of Matchstick and/or owed a fiduciary duty toward Matchstick.

98.     Around mid-day on March 6, 2024, Carmon signed the Assignment.

99.     Upon information and belief, Carmon continued accessing the Modular Orange source code from 12:30am on March 6 (the night before signing the Assignment) until just before he turned in the Matchstick Laptop at approximately 11:00am on March 8.

### DEFENDANTS' USE OF MATCHSTICK IP TO STEAL CLIENTS

100.    Upon information and belief, Carmon and CTL intended to compete with Matchstick prior to leaving Matchstick.

101.    Upon information and belief, Carmon and CTL took Matchstick IP for the purpose of competing with Matchstick.

102.    Upon information and belief, Carmon created CTL to compete with Matchstick.

103.    Upon information and belief, Carmon and CTL have competed with Matchstick.

104.    Less than a month after Carmon left Matchstick, and possibly much earlier, Defendants were in contact with Matchstick clients regarding providing them the same services Matchstick was providing.

105.    Carmon and CTL began providing such services to former Matchstick clients as early as May 9, 2024.

106.    After Carmon's separation from Matchstick, some of Matchstick's largest clients terminated their services with Matchstick—including 7 Brew and RLC Communities—and immediately set up identical websites to those that were previously provided by Matchstick.

107.    Shortly after Carmon's departure from Matchstick, Matchstick learned Defendants were using Matchstick IP to take Matchstick's clients.

108.    Furthermore, Matchstick hired a computer expert, Joseph "Casey" Kinsey, who examined Defendants' new client server and determined Defendants were using portions of Modular Orange to provide services to clients.

**DEFENDANTS' DESTRUCTION OF EVIDENCE IN STATE COURT CASE**

109.    As a result of Defendants' conduct, on June 5, 2024, Matchstick filed a lawsuit in the Circuit Court of Washington County, Arkansas for various claims under Arkansas law, Case No. 72CV-24-1909 ("State Case").

110.    On June 21, 2024, counsel for Matchstick sent a notification to preserve documents to defense counsel in connection with the State Case.

111.    In the preservation notice, Matchstick's counsel indicated to defense counsel that, *inter alia*, various source code, files, server logs, and server backups for Defendants' server from January 1, 2024 to present would need to be maintained due to the relevance to the State Case.

112.    While the content and source code on the server is controlled by and accessible to Defendants, the server is hosted by third-party Liquid Web ("LW").

113.    On August 5, 2024, counsel for Matchstick sent a notice of intent to serve a subpoena to LW, which included requests relating to such source code, files, server logs, and server backups.

114.    Upon information and belief, nearly all of the source code and files for the relevant LW-hosted server were deleted or modified by Defendants the next day.

115.    Upon information and belief, Defendants deleted or modified files on the relevant server in response to the impending subpoena to conceal the source code and files on the LW server.

116.    Matchstick's belief is in part based on analysis performed by Kinsey.

117.    On December 5, 2024, Kinsey was able to perform a review of the source code and website files for the Defendants' LW servers.

118.    Kinsey also reviewed information and statistics provided by LW in response to the subpoena.

119.    Kinsey determined that 97 percent of files on the server were created after or modified after August 6, 2024, the day after Matchstick's counsel notified Defendants of its intent to serve a subpoena to LW requesting such files.

120.    On August 6 specifically, the day after Defendants received notice of the subpoena, nearly 2000 web files were modified. This amount was approximately 10 times the amount modified in any previous day.

121.    Also on August 6, nearly 2500 web files were created. This amount was also approximately 10 times as many as any previous day.

122.    Upon information and belief, these new files were created to replace deleted files. While no information regarding deleted files was available to Matchstick, upon information and

belief, the various websites hosted on the server would not have functioned prior to the August 6 date without the nearly 2500 web files created that day. However, the websites were functioning prior to August 6. Therefore, there must have been files powering the websites that were subsequently deleted before being immediately replaced on August 6.

123.    Upon information and belief, including testimony from Carmon and a report from LW, the files on Defendants' servers amounted to approximately 15gb prior to the August 6 deletion event. The approximate size was also 15gb after modifications and creation of new files on August 6. The size match further supports that the newly created files must have replaced files deleted by Defendants.

124.    Furthermore, Kinsey discovered all source code files for hosting websites of Modular Orange's former clients that existed prior to July 8, 2024 had been deleted.

125.    Upon information and belief, the deleted files contained Matchstick IP.

126.    Upon information and belief, the following charts show how much of an outlier August 6 was. Again, this was the day after the intent to serve a subpoena to LW was served:



*A visualization of LW statistics, showing number of new files created per day.*



*A visualization of LW statistics, showing number of files modified per day.*

127.    Upon information and belief, Defendants deleted and replaced such files on August 6, the day after the intent to serve a subpoena to LW, so that Matchstick would not discover the infringement and misappropriation.

128.    An examination of Defendants' servers by Kinsey showed a match with the above statistics from LW, including the August 6 outlier event visible in the charts.

129.    Furthermore, Kinsey's examination of Defendants' servers, which covered a broader date range, showed one additional outlier day, shown below in the charts:



*A visualization of statistics gathered by Kinsey, showing number of new files created per day.*



*A visualization of statistics gathered by Kinsey, showing number of files modified per day.*

130.    The second visible outlier day occurred on September 24, 2024. This was just before the September 27, 2024 hearing on Defendants' Motion to Modify the LW Subpoena in the State Case.

131.    Upon information and belief, this was a further effort by Defendants to hide their infringements and misappropriations before Matchstick got access to the LW files via subpoena.

132.    Upon information and belief, this destruction of evidence is consistent with Defendants' behavior to conceal their actions, such as Carmon deleting Matchstick emails, Slack messages, computer files, and Git Log files.

133.    Nevertheless, Kinsey found at least 27 instances of Matchstick Copyrights on the servers when examined.

134.    In each case, the Matchstick Copyrights were being used on Defendants' live client websites, specifically with websites of former Matchstick clients.

135.    Upon information and belief, such reproduction and/or creation of derivative works of the Matchstick Copyrights onto client websites constitutes copyright infringement.

136.    Upon information and belief, distribution of the Matchstick Copyrights via the client websites constitutes infringement of Matchstick Copyrights.

137.    Upon information and belief, display of the Matchstick Copyright on the client websites constitutes infringement of Matchstick Copyrights.

**EXTENT OF DEFENDANTS' IP THEFT LEARNED IN STATE COURT DISCOVERY**

138.    At the time of filing the State Case, in part due to efforts by Defendants to conceal their activity, Matchstick had yet to ascertain the extent of Defendants' nefarious behavior. Much of Defendants' activity, such as the extent of the copyright infringement and trade secret misappropriation that prompted the present lawsuit, was learned during discovery in the State Case.

139.    During discovery in the State Case, Defendants admitted to copying Matchstick IP.

140.    In response to an interrogatory in the State Case regarding creation of its client websites, CTL stated the following:

> All publicly accessible websites on the internet are downloaded, disseminated, stored, cached, and indexed by each individual device or server that accesses the publicly accessible website. This being the case, any individual can save a front end website by simply using their browser. In Google's Chrome browser, for instance, you can simply go to "File > Save As" and it will save the publicly accessible website and its assets to your computer. This is due to the distributive nature of how the internet works and the sharing of information. So once 7 Brew hired me to host its franchisee websites, I clicked "File>Save As" on the browser as I pulled each website up and saved the files. I then uploaded the files for each

individual website into a text editor, where I could make minor edits/changes as necessary. I then connected the website to my server to deploy the site on the web.

(the "Interrogatory Response").

141.    Furthermore, emails produced during discovery in the State Case show emails from Defendants to clients admitting the same copying described in the Interrogatory Response.

142.    Upon information and belief, Defendants admit in the Interrogatory Response to downloading one or more Modular Orange files.

143.    Upon information and belief, Defendants did download one or more Modular Orange files.

144.    Upon information and belief, Defendants admit in the Interrogatory Response to downloading one or more Modular Orange front-end JavaScript files.

145.    Upon information and belief, Defendants did download one or more Modular Orange front-end JavaScript files.

146.    Upon information and belief, Defendants admit in the Interrogatory Response to downloading "Forms.js."

147.    Upon information and belief, Defendants did download "Forms.js."

148.    Upon information and belief, Defendants admit in the Interrogatory Response to downloading "Msf-ajax.js."

149.    Upon information and belief, Defendants did download "Msf-ajax.js."

150.    Upon information and belief, Defendants admit in the Interrogatory Response to downloading "Msf-tools.js."

151.    Upon information and belief, Defendants did download "Msf-tools.js."

152.    Upon information and belief, Defendants admit in the Interrogatory Response to modifying one or more Modular Orange files.

153.    Upon information and belief, Defendants did modify one or more Modular Orange files.

154.    Upon information and belief, Defendants did modify "Forms.js."

155.    Upon information and belief, Defendants did modify "Msf-ajax.js."

156.    Upon information and belief, Defendants did modify "Msf-tools.js."

157.    Upon leaving Matchstick for CTL, 7 Brew asked Phillips for the code to run its websites. While Phillips offered to provide certain HTML and CSS files for a fee, Phillips reminded 7 Brew that the JavaScript files, *i.e.*, the Matchstick Copyrights, were owned by Matchstick.

158.    Specifically, in their terms of service with Matchstick, Matchstick clients agreed Matchstick owns the "sites, designs, products, applications, tools, services, and features" of the websites Matchstick has designed and created for them.

159.    Additionally, the Matchstick terms of services states: "Matchstick Studio Owns Modular Orange. The Services are, as between you and Matchstick Studio, owned by Matchstick Studio, and are protected by copyright, trade secret, trademark and other US and foreign laws. This Agreement doesn't grant you any right, title or interest in the Services, others' User Content, our trademarks, logos or other brand features or intellectual property or trade secrets or others' content in the Services. You agree not to change, modify, translate or otherwise create derivative works of the Services or others' User Content."

160.    Upon information and belief, Defendants knew these JavaScript files were the property of Matchstick.

161.    Therefore, upon information and belief, Defendants willfully infringed the Matchstick Copyrights when they copied and saved Matchstick client websites.

162.    In the State Case, upon information and belief, Defendants admitted to the same willful infringement in connection with other former Matchstick clients, such as RLC.

163.    Upon information and belief, Defendants induced the former Matchstick clients, including 7 Brew and RLC, into infringing the Matchstick Copyrights.

164.    In part this belief is based upon emails produced in the State Case in which Defendants misled its clients into believing Defendants and/or the clients had rights to use the Matchstick IP.

165.    Upon information and belief, Defendants caused the former Matchstick clients to reproduce, create derivative works of, and/or display the Matchstick Copyrights onto websites owned or controlled by said former clients.

166.    Upon information and belief, even with the copyrighted JavaScript files, the 7 Brew, RLC, and other websites would not have run properly without Matchstick Trade Secrets, including those in Forms.php.

167.    Nevertheless, the websites were running immediately on transition from Matchstick to Defendants' websites.

168.    Furthermore, upon information and belief, the total size of Carmon's new LW-hosted server matched the size of the Matchstick server at the time Carmon left.

169.    Therefore, upon information and belief, Defendants must have taken and used the entire Modular Orange platform, including Matchstick Trade Secrets, such as Forms.php.

170.    In an interrogatory response in the State Case, Carmon admitted the Matchstick Laptop contained Matchstick IP: "During my time at Matchstick Studio, LLC, the Modular Orange

tool would have been on a web server, a private code repository (https://bitbucket.org/), and **a laptop owned by and still in possession of Matchstick Studio, LLC**." (emphasis added).

171.    Upon information and belief, as detailed above, Carmon copied the entire Modular Orange code from the Matchstick Laptop to his personal storage device and then deleted or attempted to delete the 117 log files associated with such access to the code.

172.    Therefore, upon information and belief, Defendants possessed Matchstick IP, including the Modular Orange code.

173.    Upon information and belief, Defendants deleted and/or modified the files on the LW server to cover their tracks.

174.    Upon information and belief, Carmon denied having possession or access to the Modular Orange code after leaving Matchstick because he knew Matchstick owned the code and that he was not legally allowed to possess and use Matchstick IP.

175.    Upon information and belief, Defendants' misappropriation of Matchstick IP is willful and malicious.

176.    Defendants' actions and illegal use of Matchstick IP have caused great harm to Matchstick including the loss of major clients, a loss of revenue, and other economic harm.

## COUNT I - COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501)

177.    Matchstick incorporates the allegations set forth in the paragraphs 1 through 176 as if fully set forth herein.

178.    Matchstick is the sole and exclusive owner of the Matchstick Copyrights.

179.    Matchstick has obtained registrations with the United States Copyright Office for the Matchstick Copyrights (*See* Exhibits A-D).

180.    Defendants have infringed the Matchstick Copyrights by, among other things, displaying, reproducing, creating derivative works of and/or distributing the Matchstick Copyrights.

181.    Upon information and belief, Defendants directly infringed the Matchstick Copyrights by reproducing them and/or creating derivative works of them by downloading the Matchstick Copyrights to a personal hard drive.

182.    Upon information and belief, Defendants directly infringed the Matchstick Copyrights by distributing copies of the Matchstick Copyrights, including distribution to former Matchstick clients.

183.    Upon information and belief, Defendants directly infringed the Matchstick Copyrights by reproducing them and/or creating derivative works of them by copying them onto their client websites.

184.    Upon information and belief, Defendants directly infringed the Matchstick Copyrights by displaying copies of the Matchstick Copyrights on their client websites.

185.    Upon information and belief, Defendants directly infringed the Matchstick Copyrights by distributing copies of the Matchstick Copyrights to users of their client websites.

186.    Upon information and belief, Defendant Carmon knowingly and willfully induced, contributed to, aided, and abetted Defendant CTL's infringement of the Matchstick Copyrights.

187.    Defendant Carmon had access to and did access the Matchstick Copyrights while employed with Matchstick.

188.    Through its agent, Defendant Carmon, CTL had access to and did access the Matchstick Copyrights while employed with Matchstick.

189.    Defendants had access to and did access some of the Matchstick Copyrights through inspecting Matchstick client websites.

190.    The client websites created by Defendants use the same or substantially similar source code as one or more Matchstick Copyrights.

191.    The client websites created by Defendants use strikingly similar source code as one or more Matchstick Copyrights.

192.    Plaintiffs have not authorized Defendants' use of the Matchstick Copyrights or Matchstick IP in any manner whatsoever.

193.    Defendants continue to willfully infringe Matchstick Copyrights.

194.    As a result of their wrongful conduct, Defendants are liable to Matchstick for copyright infringement under the Copyright Act.

195.    In addition to actual damages, Matchstick seeks Defendants' direct and indirect profits attributable to their infringing conduct pursuant to 17 U.S.C. § 504(b).

196.    Additionally, as Defendants are committing separate and new acts of infringement when they make and distribute copies of Matchstick Copyrights, Plaintiffs are entitled, at their election, to statutory damages pursuant to 17 U.S.C. § 504(c) for any separately accrued infringement by Defendants occurring after Matchstick's registration of the Matchstick Copyrights.

197.    Upon information and belief, Defendants attempted to conceal their infringement of the Matchstick Copyrights.

198.    Upon information and belief, Defendants' infringement of the Matchstick Copyrights was committed willfully and knowingly.

## COUNT II – MISSAPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW
### (18 U.S.C. § 1836(b))

199.    Plaintiffs incorporate the allegations set forth in the paragraphs 1 through 176 as if fully set forth herein.

200.    Matchstick is the sole and exclusive owner of the Matchstick Trade Secrets, which include the Modular Orange backend code, such as Forms.php, other backend source code and files, and proprietary client information.

201.    Matchstick has taken reasonable measures to keep the Matchstick Trade Secrets secret.

202.    The Matchstick Trade Secrets are not viewable by clients and are only known to and viewable by current Matchstick developers who are under an obligation to keep them secret via security agreements.

203.    Evidencing this secrecy is Defendants' admissions they were cut off from access to such information after leaving Matchstick.

204.    The Matchstick Trade Secrets derive independent economic value from not being generally known to or readily accessible by the public through proper means.

205.    The Matchstick Trade Secrets are related to the Modular Orange platform which is used in interstate commerce.

206.    Upon information and belief, Carmon, while still an owner and employee of Matchstick, misappropriated Matchstick Trade Secrets.

207.    Upon information and belief, Carmon, while still an owner and employee of Matchstick, intended to use Matchstick Trade Secrets in his new business.

208.    Upon information and belief, Defendants acquired Matchstick Trade Secrets through improper means.

209.    Upon information and belief, CTL knew Matchstick Trade Secrets had been provided to it through improper means.

210.    Upon information and belief, Defendants used Matchstick Trade Secrets without consent and knowing they were acquired through improper means.

211.    Upon information and belief, such improper means include Defendants' theft of the trade secrets from Matchstick, including through electronic espionage, misrepresentations, and breach of duties.

212.    As a result of their wrongful conduct, Defendants are liable to Matchstick for trade secret misappropriation under the Defend Trade Secrets Act.

213.    Upon information and belief, Matchstick Trade Secrets were willfully and maliciously misappropriated by Defendants, who attempted to subsequently conceal their knowingly illegal activity.

## COUNT III – MISSAPROPRIATION OF TRADE SECRETS UNDER ARKANSAS LAW
### (AR Code § 4-75-601, *et seq.*)

214.    Plaintiffs incorporate the allegations set forth in the paragraphs 1 through 176 as if fully set forth herein.

215.    Matchstick is the sole and exclusive owner of the Matchstick Trade Secrets, which include the Modular Orange backend code, such as Forms.php, other backend source code and files, and proprietary client information.

216.    Matchstick has taken reasonable measures to keep the Matchstick Trade Secrets secret.

217.    The Matchstick Trade Secrets are not viewable by clients and are only known to and viewable by current Matchstick developers who are under an obligation to keep them secret via security agreements.

218.    Evidencing this secrecy is Defendants' admissions they were cut off from access to such information after leaving Matchstick.

219.    The Matchstick Trade Secrets derive independent economic value from not being generally known to or readily accessible by the public through proper means.

220.    The Matchstick Trade Secrets are related to the Modular Orange platform which is used in Arkansas.

221.    Upon information and belief, Carmon, while still an owner and employee of Matchstick, misappropriated Matchstick Trade Secrets.

222.    Upon information and belief, Carmon, while still an owner and employee of Matchstick, intended to use Matchstick Trade Secrets in his new business.

223.    Upon information and belief, Defendants acquired Matchstick Trade Secrets through improper means.

224.    Upon information and belief, CTL knew Matchstick Trade Secrets had been provided to it through improper means.

225.    Upon information and belief, Defendants used Matchstick Trade Secrets without consent and knowing they were acquired through improper means.

226.    Upon information and belief, such improper means include Defendants' theft of the trade secrets from Matchstick, including through electronic espionage, misrepresentations, and breach of duties.

227.    As a result of their wrongful conduct, Defendants are liable to Plaintiffs for trade secret misappropriation under the Arkansas Uniform Trade Secrets Act.

228.    Upon information and belief, the trade secrets were willfully and maliciously misappropriated by Defendants, who attempted to subsequently conceal their knowingly illegal activity.

## COUNT IV – UNFAIR COMPETITION
### (Arkansas Common Law)

229.    Plaintiffs incorporate the allegations set forth in the paragraphs 1 through 176 as if fully set forth herein.

230.    Upon information and belief, Defendants utilized Matchstick IP, and Matchstick's product, the Modular Orange platform, which they illegally obtained and knew belonged to Matchstick, to lure away Matchstick clients.

231.    Upon information and belief, Defendants illegally induced Matchstick clients to leave Matchstick using Matchstick IP and the pirated Modular Orange platform.

232.    Upon information and belief, Carmon put this plan into motion while still an owner and manager of Matchstick.

233.    Upon information and belief, Carmon was an agent of Defendant CTL while still an owner and manager of Matchstick.

234.    Upon information and belief, Carmon deleted Matchstick's emails, including emails to and from clients, which constituted valuable company property relating to the status and needs of client websites.

235.    Upon information and belief, Carmon deleted Slack messages, which constituted valuable company property relating to the status and needs of client websites.

236.    Upon information and belief, deletion of the property was done with the intent to make it more difficult for Matchstick to counteract Defendants' attempt to lure away clients using Matchstick IP.

237.    Upon information and belief, deletion of the property was done with the intent to sabotage Matchstick's business and cause its clients to be displeased.

238.    Upon information and belief, Carmon changed the server backup setting to cause Matchstick servers to crash.

239.    Upon information and belief Carmon caused the Matchstick servers to crash with the intent to sabotage Matchstick's business and cause its clients to be displeased.

240.    Upon information and belief, Defendants would then be able to lure away those clients with promises of their own "new" product, which in reality was Matchstick's product and IP.

241.    Upon information and belief, Defendants' theft of Matchstick IP and products, destruction of Matchstick property, and subsequent deception of Matchstick customers constitutes unfair competition under Arkansas law.

242.    Upon information and belief, Matchstick was damaged by Defendants' unfair competition because Defendants successfully lured away Matchstick customers due to their unfair actions.

### COUNT V – BREACH OF FIDUCIARY DUTY
**(Arkansas Common Law and AR Code § 4-38-409)**

243.    Plaintiffs incorporate the allegations set forth in the paragraphs 1 through 176 as if fully set forth herein.

244.    During his time with Matchstick, Carmon was a member, 50% owner, and manager of the company.

245.    Under Arkansas Law, a member, officer, and/or manager owes a duty of good faith, duty of care, and duty of loyalty to the company.

246.    Under the Arkansas Uniform Limited Liability Act, AR Code § 4-38-409, member-managers owe the company and other members a duty of loyalty and care.

247.    Under AR Code § 4-38-409(b)(3), a member has a duty "to refrain from competing with the company in the conduct of the company's activities and affairs before the dissolution of the company."

248.    Defendant Carmon owed a fiduciary duty to Matchstick during his time with the company.

249.    Defendant Carmon breached his duty of good faith, duty of care, and duty of loyalty to the company and his breaches directly damaged Matchstick.

250.    Upon information and belief, Carmon breached his fiduciary duty to Matchstick through deletion of company emails and Slack messages containing valuable Matchstick property.

251.    Upon information and belief, Carmon breached his fiduciary duty to Matchstick by changing the server backup settings to intentionally cause a server crash.

252.    Upon information and belief, Carmon breached his fiduciary duty to Matchstick by planning to form a competing company while an owner and officer of Matchstick.

253.    Upon information and belief, Carmon's theft of Matchstick IP for purposes of competing with Matchstick constitutes a breach of fiduciary duty to Matchstick.

254.    Upon information and belief, Carmon breached his fiduciary duty to Matchstick by contacting his own counsel from a Matchstick-owned email address on a Matchstick-owned computer and for the purpose furthering Defendants' illegal and improper activities described herein.

255.    Carmon's breach of his fiduciary duty to Matchstick is in violation of Arkansas law, including the Arkansas Uniform Limited Liability Act.

## **RELIEF REQUESTED**

WHEREFORE, for the reasons stated above, Plaintiff prays for judgment against Defendants as follows:

      a.     Under 17 U.S.C. § 502, grant injunctions against Defendants on such terms as the Court deems reasonable to prevent or restrain infringement of Matchstick's copyrights.

      b.     Under 17 U.S.C. § 503, order the impounding and ultimately destruction, on such terms as the Court may deem reasonable, of any records or material involved in Defendants' copyright infringement.

      c.     Under 17 U.S.C. § 504(b), award to Matchstick all gross profits of Defendants that are attributable to the infringement.

      d.     Under 17 U.S.C. § 504(c)(1), if Matchstick so elects, award it statutory damages up to the amount of $30,000 per infringement for any separately accrued infringement by Defendants occurring after registration of the Matchstick Copyrights.

      e.     Under 17 U.S.C. § 504(c)(2), if the Court finds infringement was committed willfully and Matchstick so elects, award it statutory damages up to the amount of $150,000 per infringement for any separately accrued willful infringement by Defendants occurring after registration of the Matchstick Copyrights.

      f.     Under 17 U.S.C. § 505, award costs to Matchstick.

      g.     Under 17 U.S.C. § 505, as the prevailing parties in a Copyright lawsuit, award to Matchstick its reasonable attorney's fees in connection with any separately accrued infringement by Defendants occurring after registration of the Matchstick Copyrights.

h.    Under 18 U.S.C. § 1836(b)(3)(A), grant injunctions against Defendants on such terms as the Court deems reasonable to prevent or restrain dissemination of Matchstick trade secrets.

i.    Under 18 U.S.C. § 1836(b)(3)(B)(i)(I), award to Matchstick damages for actual loss caused by the misappropriation of its trade secrets.

j.    Under 18 U.S.C. § 1836(b)(3)(B)(i)(II), award to Matchstick damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss.

k.    Under 18 U.S.C. § 1836(b)(3)(B)(ii), if necessary in lieu of damages measured by other methods, award to Matchstick damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosure and use of trade secrets.

l.    Under 18 U.S.C. § 1836(b)(3)(C), if the Court finds the trade secrets were willfully and maliciously misappropriated, award to Matchstick exemplary damages in an amount up to 2 times the amount of the damages awarded under 18 U.S.C. § 1836(b)(3)(B).

m.    Under AR Code § 4-75-604, grant injunctions against Defendants on such terms as the Court deems reasonable to prevent or restrain dissemination of Matchstick's trade secrets.

n.    Under AR Code § 4-75-606(a), in addition to injunctive relief, award to Matchstick damages for the actual loss caused by misappropriation.

o.    Under AR Code § 4-75-606(b), award to Matchstick damages for the unjust enrichment of Defendants caused by misappropriation that is not taken into account in computing damages for actual loss.

p.    Under AR Code § 4-75-607, award to Matchstick its reasonable attorneys' fees in connection with the willful and malicious misappropriation.

q.    Award Matchstick compensatory damages for Defendants' unfair competition.

r.    Award Matchstick appropriate equitable relief for Defendants' unfair competition, in the event monetary damages are insufficient to remedy Matchstick's harm.

s.    Award Matchstick compensatory damages for Defendant Carmon's breach of fiduciary duty.

t.    Award Matchstick appropriate equitable relief for Defendant Carmon's breach of fiduciary duty, in the event monetary damages are insufficient to remedy Matchstick's harm.

u.    Awarding Matchstick all available pre-judgment and post-judgment interest on all amounts of any judgment.

v.    Grant to Matchstick such further relief as may be equitable and proper.


## DEMAND FOR JURY TRIAL

Plaintiff Matchstick demands a jury trial for all issues triable to a jury.

Dated: June 18, 2025.                    Respectfully submitted,

                                         **KUTAK ROCK, LLP**

                                         /Scott J. Strohm/
                                         Scott J. Strohm (#68424MO)
                                         2405 Grand Boulevard, Suite 600
                                         Kansas City, MO 64108
                                         Scott.Strohm@KutakRock.com
                                         (816) 502-4620

                                         /Jason J. Jackson/
                                         Jason J. Jackson (PHV Motion Forthcoming)
                                         2001 16th Street, Suite 1800
                                         Denver, CO 80202
                                         Jason.Jackson@KutakRock.com
                                         (303) 297-2400

                                         *Attorneys for Plaintiff Matchstick Studio, LLC*

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TXu 2-483-784

**Effective Date of Registration:**
April 28, 2025
**Registration Decision Date:**
April 29, 2025

---

## Title

**Title of Work:**   forms.php

## Completion/Publication

**Year of Completion:**   2024

## Author

- **Author:**   Matchstick Studio LLC
  **Author Created:**   computer program
  **Work made for hire:**   Yes
  **Domiciled in:**   United States

## Copyright Claimant

**Copyright Claimant:**   Matchstick Studio LLC
2592 N Gregg Ave, Ste 50, Fayetteville, AR 72703, United States

## Rights and Permissions

**Organization Name:**   Kutak Rock LLP
**Name:**   Scott J. Strohm
**Email:**   scott.strohm@kutakrock.com
**Telephone:**   (816)960-0090
**Address:**   2405 Grand Boulevard
Suite 600
Kansas City, MO 64108 United States

## Certification

**Name:**   Scott J. Strohm

**Date**: April 08, 2025
**Applicant's Tracking Number**: 272508-1

**Correspondence:** Yes

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

# TX 9-407-583

**Effective Date of Registration:**
June 21, 2024
**Registration Decision Date:**
July 10, 2024

## Title ─────────────────────────

  **Title of Work:**   forms.js

## Completion/Publication ─────────────

  **Year of Completion:**   2021
  **Date of 1st Publication:**   February 01, 2021
  **Nation of 1st Publication:**   United States

## Author ────────────────────────

- **Author:**   Matchstick Studio LLC
  **Author Created:**   computer program
  **Work made for hire:**   Yes
  **Domiciled in:**   United States

## Copyright Claimant ─────────────────

  **Copyright Claimant:**   Matchstick Studio LLC
  2592 N Gregg Ave, Ste 50, Fayetteville, AR, 72703, United States

## Certification ───────────────────────

  **Name:**   Heather N. Tilley
  **Date:**   June 21, 2024

# EXHIBIT C

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

# TX 9-407-593

**Effective Date of Registration:**
June 21, 2024
**Registration Decision Date:**
July 10, 2024

---

## Title

**Title of Work:** msf-ajax.js

## Completion/Publication

**Year of Completion:** 2021
**Date of 1st Publication:** February 01, 2021
**Nation of 1st Publication:** United States

## Author

- **Author:** Matchstick Studio LLC
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Matchstick Studio LLC
2592 N Gregg Ave, Ste 50, Fayetteville, AR, 72703

## Certification

**Name:** Heather N. Tilley
**Date:** June 21, 2024

# EXHIBIT D

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-407-586

**Effective Date of Registration:**
June 21, 2024
**Registration Decision Date:**
July 10, 2024

---

## Title

**Title of Work:** msf-tools.js

## Completion/Publication

**Year of Completion:** 2021
**Date of 1st Publication:** February 01, 2021
**Nation of 1st Publication:** United States

## Author

- **Author:** Matchstick Studio LLC
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Matchstick Studio LLC
2592 N Gregg Ave, Ste 50, Fayetteville, AR, 72703

## Certification

**Name:** Heather N. Tilley
**Date:** June 21, 2024

Page 1 of 1